**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
LITTLE ROCK DIVISION**

CONSUELLA HARRIS                                                                    PLAINTIFF

V.                                         NO. 4:11CV00632 JTR

MICHAEL J. ASTRUE,
Commissioner,
Social Security Administration                                                   DEFENDANT

**MEMORANDUM OPINION AND ORDER**

**I. Introduction**

Plaintiff, Consuella Harris, has appealed the final decision of the Commissioner of the Social Security Administration denying her claim for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI). Both parties have filed Appeal Briefs (docket entries #16, #17), and the issues are now joined and ready for disposition.

The Commissioner's denial of benefits must be upheld upon judicial review if the decision is supported by substantial evidence in the record as a whole. *Moore v. Astrue*, 623 F.3d 599, 602 (8th Cir. 2010); *see* 42 U.S.C. §§ 405(g), 1383(c)(3). Substantial evidence is "relevant evidence which a reasonable mind would accept as adequate to support the Commissioner's conclusion." *Moore*, 623 F.3d at 602. In its review, the Court should consider evidence supporting the Commissioner's decision

as well as evidence fairly detracting from it. *Id.* Nevertheless, if it is possible to draw two inconsistent conclusions from the evidence and one of these conclusions represents the Commissioner's findings, the denial of benefits must be affirmed. *Id.*

On March 10, 2009, Plaintiff protectively filed applications for DIB and SSI, alleging an onset date of January 26, 2009. (Tr. 121-40, 158.) She reported that she was unable to work due to bipolar disorder, manic depression and paranoid schizophrenia. (Tr. 162.) She said she was 5'7" and weighed 310 pounds. (Tr. 161.) She was twenty-seven years old at the time of her applications, and had completed high school. (Tr. 158, 167.) She worked as a manager in a fast food restaurant from 2003 until January 2009. (Tr. 163.) She also had past work as a fast food crew person, and as a cashier in a gas station. (Tr. 169.)

After Plaintiff's claims were denied at the initial and reconsideration levels, she requested a hearing before an Administrative Law Judge (ALJ). On March 24, 2010, the ALJ conducted a hearing at which Plaintiff and a vocational expert testified. (Tr. 24-54.)

The ALJ considered Plaintiff's impairments by way of the familiar five-step sequential evaluation process. Step 1 involves a determination of whether the claimant is involved in substantial gainful activity. 20 C.F.R. §§ 404.1520(a)(4)(i) & (b), 416.920(a)(4)(i) & (b). If the claimant is, benefits are denied, regardless of

medical condition, age, education, or work experience. *Id.*

Step 2 involves a determination, based solely on the medical evidence, of whether the claimant has a "severe" impairment, *i.e.*, an impairment or combination of impairments which significantly limits the claimant's ability to perform basic work activities. *Id.* §§ 404.1520(a)(4)(ii) & (c), 416.920(a)(4)(ii) & (c). If not, benefits are denied. *Id.*

Step 3 involves a determination, again based solely on the medical evidence, of whether the severe impairment(s) meets or equals a listed impairment, which is presumed to be disabling. *Id.* §§ 404.1520(a)(4)(iii) & (d), 416.920(a)(4)(iii) & (d). If so, and the duration requirement is met, benefits are awarded. *Id.*

Step 4 involves a determination of whether the claimant has a sufficient residual functional capacity (RFC), despite the impairment(s), to perform the physical and mental demands of past relevant work. *Id.* §§ 404.1520(a)(4)(iv) & (f), 416.920(a)(4)(iv) & (f). If so, benefits are denied. *Id.*

Step 5 involves a determination of whether the claimant is able to make an adjustment to other work, given the claimant's RFC, age, education and work experience. *Id.* §§ 404.1520(a)(4)(v) & (g), 416.920(a)(4)(v) & (g). If so, benefits are denied; if not, benefits are awarded. *Id.*

In his May 20, 2010 decision (Tr. 10-19), the ALJ found that Plaintiff: (1) had

not engaged in substantial gainful activity since January 26, 2009, her alleged onset date; (2) had "severe" impairments consisting of obesity, peripheral edema, polycystic ovarian syndrome (PCOS), bipolar disorder, anxiety disorder NOS, and personality disorder; (3) did not have an impairment or combination of impairments that met or medically equaled a listed impairment; (4) had the RFC to perform work at the light exertional level, but was limited to work where: interpersonal contact is routine but superficial; the complexity of tasks is learned by experience, with several variables and judgment within limits; and the supervision required is little for routine tasks but detailed for non-routine tasks; (5) was not credible regarding the intensity, persistence and limiting effects of her symptoms; and (6) was able to perform her past relevant work as a fast food worker. Thus, the ALJ ended his analysis at Step 4, concluding that Plaintiff was not disabled.

The Appeals Council denied Plaintiff's request for review of the ALJ's decision, thereby making it the final decision of the Commissioner. (Tr. 1-3.) Plaintiff then appealed the denial of benefits to this Court (docket entry #1).

## II. Analysis

Plaintiff argues that the ALJ erred: (1) in failing to fully consider all her alleged physical and mental impairments and their combined effect; (2) in failing to properly evaluate the credibility of her subjective complaints regarding her physical symptoms;

(3) in inadequately assessing the physical and mental demands of her past work; and (4) in concluding that she had the RFC to perform a wide range of light work. For the reasons discussed below, the Court concludes that Plaintiff's arguments are without merit.

    A.    <u>Failure to Consider All of Plaintiff's Impairments and Their Combined Effect</u>.

Plaintiff alleges that the ALJ: (1) "disregarded" or failed to properly address evidence of her diabetes mellitus, hypertension, fatigue, difficulty sleeping, difficulty concentrating, and schizoaffective disorder; and (2) "sidestepped" the requirement that he consider the combined effect of all her physical and mental impairments. (Docket entry #16, at 12-13, 17-18.)

As discussed, the ALJ found that Plaintiff had "severe" physical impairments of obesity, peripheral edema, and PCOS, and "severe" mental impairments of bipolar disorder, anxiety disorder, and personality disorder. (Tr. 12.) His decision shows that he considered the additional impairments cited by Plaintiff.

First, the ALJ specifically addressed Plaintiff's allegations of diabetes and hypertension, finding that neither was a "medically determinable impairment." (Tr. 12-13.)

As the ALJ accurately noted, the records did not contain medical evidence consisting of signs, symptoms and laboratory findings to support a diagnosis of

diabetes.[1]  *See* 20 C.F.R. §§ 404.1508, 416.908.  He nevertheless went on to discuss: (1) the fact that Plaintiff's physician, Adam Maass, M.D., prescribed Metformin in September 2008 and stated that it was "for her PCOS" but "hopefully ... [would] help to decrease her chances of getting diabetes" (Tr. 12, 16, 240); (2) her May 2009 report to a consultative psychologist, Terry L. Efird, Ph.D., that she was prescribed medication for diabetes (Tr. 17, 252); and (3) her hearing testimony in March 2010 that she had difficulty regulating her blood sugar, and that the fluctuations made her weak and tired even with medication (Tr. 15, 35-36).

Regarding hypertension, the ALJ noted: (1) Plaintiff's hearing testimony that she experiences swelling in her legs, which she attributed to hypertension (Tr. 13, 15, 36-37); (2) normal blood pressure readings in September 2008 and January 2009 (Tr. 13, 239, 243); (3) Dr. Maass's prescription of Aldactone (spironolactone) to relieve the edema and improve her PCOS symptoms (Tr. 13, 16, 240); and (4) her report to Dr. Efird that she was prescribed hypertension medication (Tr. 17, 252).

---

[1]There is no medical evidence that Plaintiff was ever diagnosed with diabetes or prescribed any diabetic medication for the express purpose of controlling the level of her blood glucose.  In fact, her medical records fail to contain a single notation indicating her blood glucose level or any specific complaints to her doctors about fluctuating glucose levels, or whether she needed any medication for that problem.  While Metformin is generally prescribed to control high blood sugar in patients with type 2 diabetes, it may also be used – as was explicitly stated by Dr. Maass – *to prevent diabetes* in people who are at high risk for becoming diabetic, as well as to treat PCOS.  WebMD, http://www.webmd.com (follow "Drugs & Supplements," then "Metformin Oral," then "Uses") (last visited May 31, 2012).

Next, the ALJ explicitly noted Plaintiff's hearing testimony that she was restless at night and had difficulty sleeping, and was "weak and tired" on a daily basis. (Tr. 15, 36, 43.)

In discussing Plaintiff's mental impairments, the ALJ specifically found that she had "moderate" difficulties with regard to concentration, persistence or pace. (Tr. 14.) He stated that this conclusion was based on Dr. Efird's observation that Plaintiff had the capacity to cope with the typical mental and cognitive demands of basic work-like tasks, appeared able to track and respond adequately for purposes of the consultative evaluation, and showed "no remarkable problems" with attention, concentration, persistence or pace. (Tr. 254-55.) The ALJ also cited Plaintiff's testimony that she did not think she could stay focused well enough to drive and that her concentration was interrupted by the voices she hears. (Tr. 15, 42-43.)

Finally, the ALJ noted that a psychiatrist in April 2009 had diagnosed Plaintiff with "schizoaffective bipolar disorder." (Tr. 16, 288.) The ALJ also noted (1) Plaintiff's reports to examining mental health providers of visual and auditory hallucinations and "hearing noises and seeing images" (Tr. 16-17, 226, 251, 279, 284, 287-88, 290); and (2) her report that those symptoms improved with medication (Tr. 16, 252, 290).

The ALJ's decision also shows that he applied the proper regulatory framework

and considered the combined effect of Plaintiff's "severe" impairments, as well as those he did not find to be severe.

He correctly stated that he had to consider, at Step 2 of the sequential process, whether Plaintiff had a severe impairment or a "combination of impairments" that was severe, and he expressly found that her impairments were severe "because, singly, and in combination," they significantly limited her ability to perform basic work activities. (Tr. 11, 12.)

At Step 3, the ALJ correctly stated that he had to consider whether her impairment or "combination of impairments" met or medically equaled the criteria of a listed impairment. (Tr. 11.) He expressly found that she did not have "an impairment or combination of impairments" that met listing criteria. (Tr. 13.)

At Step 4, the ALJ also noted that he had to consider, in assessing Plaintiff's RFC, "all of [her] impairments, including impairments that are not severe" (Tr. 11), and repeatedly stated that he was considering "all the evidence" and "the entire record" in making his findings, including his RFC determination. (Tr. 10, 12, 14, 15, 18.)

Finally, the ALJ expressly stated that he was evaluating Plaintiff's obesity in compliance with the governing ruling, SSR 02-1p, which requires the consideration of the "combined effects of obesity with other impairments." (Tr. 13, 16.) *See* SSR

02-1p, 2000 WL 628049, at *1, *3-*7 (Sept. 12, 2002).

Thus, in his decision, the ALJ clearly considered all of Plaintiff's physical and mental conditions in combination.

B.   Failure to Properly Assess Plaintiff's Credibility Regarding Her Physical Symptoms.

Plaintiff argues that, even though her testimony was supported by medical evidence, the ALJ disregarded her subjective complaints of pain due to her obesity, peripheral edema, PCOS and headaches, and "appears to have allowed personal observations of her" to have influenced his judgment. (Docket entry #16, at 13-14.)

An ALJ may discount a claimant's subjective allegations if they are inconsistent with the record as a whole. *Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984); *see* 20 C.F.R. §§ 404.1529(c), 416.929(c) (listing factors to consider);[2] SSR 96-7p, 1996 WL 374186 (July 2, 1996).

The ALJ cited the relevant regulatory authority, and he explicitly found that Plaintiff's statements concerning "the intensity, persistence and limiting effects of her symptoms" were not credible to the extent they were inconsistent with his RFC

---

[2] As stated in this regulation, the ALJ is required to consider, in addition to the objective medical evidence and the claimant's prior work record, statements and observations made by the claimant, his or her medical providers and any others regarding (1) the claimant's daily activities, (2) the location, duration, frequency and intensity of pain or other symptoms, (3) precipitating and aggravating factors, (4) type, dosage, effectiveness and side effects of medications, (5) non-medication treatments or other measures taken to alleviate pain and symptoms, and (6) functional limitations.

assessment. (Tr. 15.) His decision makes it clear that, before discounting the credibility of her complaints regarding her physical symptoms, he took into account matters such as: (1) her hearing testimony and statements to medical providers regarding her symptoms and limitations (Tr. 15-16); (2) her daily performance of household chores, childcare, and other activities (Tr. 15, 18); (3) Plaintiff's medical appointments in September 2008 and January 2009 where treatment was provided for her PCOS, weight gain, and swelling in her legs (Tr. 15-16, 239-45); (4) the medications prescribed; (5) the absence of any other significant medical evidence regarding her physical health[3] (Tr. 16); (6) the fact that none of the doctors caring for her physical health assigned any limitations (Tr. 17); (7) Dr. Efird's observation regarding the "possibility of symptom exaggeration"[4] (Tr. 17, 18); and (8) statements from Plaintiff's mother and stepfather (Tr. 17-18, 215, 217). Notably, Plaintiff alleged no physical impairments in her initial disability application, answered "does not apply" to the questions about pain in a disability questionnaire in March 2009, and identified no physical abilities that were affected by her medical conditions. (Tr. 162,

---

[3]The ALJ noted Plaintiff's testimony that she had difficulty getting in touch with a low cost/no cost clinic. (Tr. 16.) Plaintiff testified that she had tried to call only one clinic, but "they're never there." (Tr. 34, 44-45.)

[4]Dr. Efird questioned Plaintiff's reports that she had gained forty pounds in the prior two weeks and that she had experienced suicidal ideation on a daily basis for most of her life. (Tr. 251, 254, 255.)

177, 184.)

Nothing in the ALJ's decision refers to his personal observation of Plaintiff or her demeanor at the hearing. Nonetheless, such observations are an appropriate factor in a credibility determination. *Lamp v. Astrue*, 531 F.3d 629, 632 (8th Cir. 2008).

Finally, the ALJ's decision shows that he credited Plaintiff's subjective physical complaints to some degree, stating that, despite the lack of medical evidence, he had given her "the benefit of the doubt and taken her reported limitations in consideration" by "limiting her to the performance of light exertional work." (Tr. 17.)

After reviewing the complete record, the Court concludes that the ALJ properly evaluated Plaintiff's credibility regarding her physical complaints.

C.   Failure to Properly Evaluate Plaintiff's Past Work.

Plaintiff next argues that the ALJ's conclusion that she could return to her past work as a fast food worker is "flawed" because the ALJ failed to accurately determine and make precise findings regarding the physical and mental demands of that work. (Docket entry #16, at 15.)

In evaluating past work, an ALJ may properly consider information provided by the claimant, and may utilize the services of vocational experts and other resources such as the Dictionary of Occupational Titles (DOT). 20 C.F.R. §§ 404.1560(b)(2), 416.960(b)(2); *see Wagner v. Astrue*, 499 F.3d 842, 853-54 (8th Cir. 2007) (ALJ

properly relied on vocational expert's testimony in assessing functional demands and job duties of past work).

In connection with the disability application process in this case, Plaintiff completed forms listing her past jobs and describing the exertional and skill demands of those jobs. (Tr. 163, 169-76.) At the administrative hearing, the ALJ asked Plaintiff about her specific physical duties as a crew-member and as manager at a fast food restaurant, as well as some mental aspects of the jobs. (Tr. 30-33, 41-42.) The vocational expert, who had been present during Plaintiff's testimony, testified that he had sufficient information about Plaintiff's past work to classify it in terms of exertional and skill levels. (Tr. 47-48.) The expert identified Plaintiff's past work as a "fast food services manager" and a "fast food worker," as described in the DOT, and further stated that his testimony was consistent with information found in the DOT. (Tr. 48-51.) *See* DOT §§ 185.137-010, 311.472-010. Finally, the expert testified that an individual with the limitations described by the ALJ could perform work as a fast food worker. (Tr. 49.)

In his decision, the ALJ found that Plaintiff's past job as a fast food worker was "light exertional level, unskilled work." (Tr. 18.) He further stated that, "[i]n comparing the claimant's [RFC] with the physical and mental demands" of this past work, "and considering the testimony of the vocational expert at the hearing," Plaintiff

was able to perform the job as a fast food worker "as actually and generally performed." (Tr. 18.)

This record reflects a sufficient analysis of Plaintiff's past work.

D. <u>Failure to Properly Assess Plaintiff's RFC</u>.

Plaintiff argues that the ALJ erred in determining that she had the RFC for a wide range of light work because: (1) the mental RFC assessment omitted her inability to handle work stresses, her schizoaffective disorder, and her difficulty concentrating; (2) the physical RFC assessment omitted her difficulty sleeping, swelling in her legs, and fatigue; (3) the ALJ failed to procure a general physical examination or physical RFC findings from a physician to determine the extent and limiting effects of her physical impairments; and (4) the ALJ failed to properly consider whether Plaintiff was able to work in the "real world" on a regular and sustained basis. (Docket entry #16, at 13, 15-18.)

The ALJ bears the primary responsibility for assessing a claimant's RFC at Step 4 of the sequential evaluation, based on all relevant evidence, including medical records, observations and opinions of treating physicians and others, and the claimant's own descriptions of his or her limitations. 20 C.F.R. §§ 404.1545(a)(3), 416.945(a)(3). However, a claimant's RFC is a medical question and "at least some" medical evidence must support the ALJ's RFC determination. *Wildman v. Astrue*, 596

F.3d 959, 969 (8th Cir. 2010).

Here, the ALJ's decision shows that, in making his physical and mental RFC assessments, he specifically considered: (1) the relevant medical evidence, including all physician opinions in the record; (2) Plaintiff's hearing testimony and reports to medical providers regarding her limitations and symptoms; and (3) the extent of her daily activities. (Tr. 14-18.) He was entitled to exclude from the RFC subjective allegations that he found were not credible. *See Wildman*, 596 F.3d at 969.

The ALJ discussed at length what he described as "the mental component" of Plaintiff's case and said he was factoring any limiting effects into his RFC assessment. (Tr. 13-14, 16-18.) He specifically cited the following supporting medical evidence: (1) Plaintiff's reported "long history" of psychiatric treatment and diagnoses of mental illness; (2) a March 4, 2009 hospital admission after an apparent suicide attempt, and the provision of psychotropic medications and psychotherapy at that time (Tr. 224-36); (3) follow-up visits to mental health clinics on March 11, April 14 and 27, and June 1, 2009 (Tr. 222, 279-91); (4) her reports that the medications were helping and her symptoms had improved (Tr. 252, 290); (5) Dr. Efird's diagnostic evaluation in May 2009, in which he concluded that Plaintiff's mental symptoms did not severely impair her adaptive functioning (Tr. 251-55); (6) Dr. Efird's assessment of a GAF

score of 55-65, indicating mild to moderate symptoms[5] (Tr. 254); and (7) the fact that Plaintiff did not take any psychiatric medications or receive any mental health services from 2000 to March 2009, yet was able to work full-time (Tr. 252, 254). The ALJ also noted Plaintiff's testimony that she quit work in January 2009, when her grandmother became ill and she could not get sufficient time off from work to care for her. (Tr. 17, 33, 42.) *See Goff v. Barnhart*, 421 F.3d 785, 792-93 (8th Cir. 2005) (claimant's ability to work in the past with alleged impairments demonstrates they are not presently disabling; relevant factor is whether claimant leaves work for reasons other than medical condition).

As discussed above, the ALJ recited the limited medical evidence regarding Plaintiff's physical symptoms and accounted for some limitations in his physical RFC assessment by restricting her to work at the light exertional level. Plaintiff did not allege any physical impairments in her disability application, and none of her treating physicians imposed any physical restrictions. In addition, on March 4, 2009, a general physical examination was performed when Plaintiff was admitted to the hospital following a suicide attempt. All physical findings were normal, and Plaintiff had no

---

[5] *See American Psychiatric Ass'n, Diagnostic and Statistical Manual of Mental Disorders* 32-33 (4th ed., Text Rev. 2000) (GAF of 51-60 indicates the individual has "[m]oderate symptoms ... or moderate difficulty" in social, occupational, or school functioning; a GAF of 61 to 70 represents "mild" symptoms or "some difficulty").

edema in her extremities, had full range of motion, and had normal station, gait and ambulation. (Tr. 226-28.) This constitutes sufficient medical evidence to support the physical RFC determination. The ALJ need not order a medical examination if the medical records provide sufficient evidence to determine whether the claimant is disabled. *Martise v. Astrue*, 641 F.3d 909, 926-27 (8th Cir. 2011).

Finally, the ALJ expressly recognized that RFC is an individual's "ability to do physical and mental work activities *on a sustained basis* despite limitations from her impairments." (Tr. 11) (emphasis added). By definition, RFC is a measure of a claimant's ability to perform work on a "regular and continuing" basis. 20 C.F.R. §§ 404.1545(b) & (c), 416.945(b) & (c). The ALJ's RFC assessment clearly contemplates the effect that a "real world" work environment would have on Plaintiff's ability to function, including limitations on the amount of interpersonal contact, complexity of tasks, and level of supervision. (Tr. 14.) It was unnecessary for the ALJ to make any further specific findings in this regard. *See McCoy v. Astrue*, 648 F.3d 605, 617 (8th Cir. 2011).

### III. Conclusion

After a careful review of the entire record and all arguments presented, the

Court finds that Plaintiff's arguments for reversal are without merit and that the record as a whole contains substantial evidence upon which the ALJ could rely in reaching his decision. The Court further concludes that the ALJ's decision is not based on legal error.

IT IS THEREFORE ORDERED THAT the final decision of the Commissioner is affirmed and Plaintiff's Complaint is DISMISSED, WITH PREJUDICE.

DATED THIS 8th DAY OF June, 2012.

_____
UNITED STATES MAGISTRATE JUDGE